

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| ANTONIO E. GOODWIN,<br>　　　　Plaintiff | § <br> § <br> § | |
| vs. | § <br> § | CIVIL ACTION NO.  3:21-2816-MGL |
| CHRISTINE E. WORMUTH, *in her official*<br>*capacity as Secretary, Department of the Army,*<br>　　　　Defendant. | § <br> § <br> § <br> § | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION
AND GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff Antonio E. Goodwin (Goodwin) filed this job discrimination employment action against his former employer, Defendant Christine E. Wormuth, in her official capacity as Secretary of the Department of the Army (Wormuth).

In Goodwin's amended complaint, he brings claims of failure to accommodate and retaliation pursuant to the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et seq.; and discrimination and retaliation based on race or color pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.  As the Court explains below, it concludes Goodwin constructively amended his amended complaint so as to also bring a disability discrimination claim under the Rehabilitation Act.

The Court has federal question jurisdiction over this case in accordance with 28 U.S.C. §  1331.

The matter is before the Court for review of the Report and Recommendation (the Report) from the United States Magistrate Judge suggesting the Court grant in part and deny in part Wormuth's motion for summary judgment.  More specifically, she recommends the Court grant

Wormuth's motion as to all Goodwin's above-listed claims, except his retaliation claim pursuant to the Rehabilitation Act.

## II.    STANDARD OF REVIEW

### A.    For the Magistrate's Report

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

### B.    For Goodwin's discrimination claims

In considering Goodwin's job discrimination claims, except his failure to accommodate cause of action, because his is a circumstantial case, the Court must employ the familiar burden-shifting scheme set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Pursuant to this framework, the plaintiff must first make out a prima facie case of discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). The burden of production then shifts to the employer to articulate a legitimate, non-discriminatory justification for its allegedly discriminatory action. *Id*. at 253.

If the employer carries this burden, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the neutral reasons offered by the employer were not its true reasons, but were instead a pretext for discrimination. *Id*. The pretext inquiry merges with the ultimate burden of persuading the court the plaintiff has been the victim of intentional discrimination, which at all times rests with the plaintiff. *Id*. at 256. To meet this "merged" burden,

the employee must prove by a preponderance of the evidence that the decision maker's stated reason is untrue or that the employer's proffered explanation is unworthy of credence. *Id.*

"Notwithstanding the intricacies of proof schemes, the core of every [job discrimination] case remains the same, necessitating resolution of the ultimate question of discrimination [or not]." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294–95 (4th Cir. 2010).

## III.    FACTUAL AND PROCEDURAL HISTORY

The Magistrate Judge set forth the following factual recitation:

> Goodwin was formerly employed as an electrician at the Department of the Army Installation Management Command at Fort Jackson, South Carolina. Goodwin was hired on December 10, 2018, and his position was subject to a two-year probationary period. Around the time he was hired, Goodwin told his supervisor, Marcus Leslie [(Leslie)], that he had disabilities. Goodwin survived esophageal cancer, but it required surgery that altered the size of his stomach, making it necessary for Goodwin to eat small, frequent meals throughout the day to sustain his energy. Goodwin told Leslie that he needed short breaks to eat between five or six times a day. Goodwin also told Leslie that he needed to avoid extreme heat and lying on his stomach. Goodwin did not formally request those accommodations until months later in July 2019 by submitting an accommodations request through the Equal Employment Opportunity Office (EEO), though Goodwin claims he emailed Leslie a request for those accommodations before that in April 2019.
>
> On July 8, 2019, Jason Brown [(Brown)], an electrical work leader, asked Goodwin and another electrician to repair exposed wires in the ceiling of a building on base. Goodwin and the other electrician went to the building and determined that the repair would require work on a smoke detector. Goodwin emailed Brown later that day to explain that he was not trained or certified to work on the smoke detector system. Goodwin left the work order for the job on Brown's desk.
>
> This resulted in a three-day incident during which Leslie and Goodwin repeatedly were at odds. On July 17 Leslie gave Goodwin a Letter of Warning to put Goodwin on notice of misconduct. The letter stated that Goodwin's "lack of initiative to attempt any repairs is unprofessional and unacceptable." The letter stated that Goodwin should have used his "professional experience and knowledge to figure it out" or he should have "communicated with [his] work

3

leader . . . while . . . still at the job site" to receive training or direction. Goodwin signed the letter, acknowledging its receipt, but Goodwin wrote under his signature, "I signed this document under duress and discrimination due to my disability, age, and race. This document is full of lies." Both Goodwin and Leslie are African American. The electrician who accompanied Goodwin to repair the exposed wires is Caucasian and was not disciplined.

The next morning, July 18, Goodwin emailed two supervisors above Leslie—Bill Thiel [(Thiel)] and Gregg Winegar [(Winegar)]—stating that Leslie's Letter of Warning from the previous day was biased and that Goodwin felt he was being discriminated against due to his color, age, and disability. Goodwin noted that the Army and his supervisor were aware of his disabilities, mentioning his asthma and "other disabilities." Goodwin further claimed that Leslie and Brown conspired against him with "acts of discrimination." In a text message later that day, Winegar gave Goodwin permission to go to the EEO and the Union offices. Later that morning, Goodwin emailed Leslie asking to work inside due to excessive heat and noting that he was making the request by email because Leslie and Brown created a hostile work environment for him.

That afternoon, Leslie emailed Goodwin stating that Goodwin failed to provide Leslie with the original copy of the signed Letter of Warning. Leslie also stated that he made a memorandum of Goodwin's insubordination from the day before, noting that Goodwin left Leslie's office before Leslie finished their meeting. Goodwin quickly replied to the email noting that he came back to Leslie's office with a witness to support his side of the story and that he gave the original copy of the letter back to Leslie. Goodwin also stated that Leslie was now harassing him, that the harassment was unwanted and affecting his disability, and that he has a right to be free from harassment and discrimination. Goodwin also asked for permission to go to the EEO, to which Leslie replied that Goodwin had permission to go to the EEO and Union offices after lunch that day.

Later that day, Goodwin sent another email to Leslie again asking for permission to go to the EEO and Union offices, but requesting a response in writing because he did not trust Leslie's verbal responses. Goodwin stated that Leslie's Letter of Warning and memorandum of insubordination were lies to cover up Leslie's harassment and discrimination. Goodwin also requested "reasonable accommodations" that all communication between supervisory officials, including Brown, be through email. Leslie responded that Goodwin's request to have all communication by email was unreasonable, noting that all employees were to communicate through government-issued radios. However, after Goodwin replied the next morning that he would provide medical evidence to support his

4

request for accommodation, Leslie provided Goodwin the contact information for the reasonable accommodation coordinator.

At some point on July 18 and July 19, Leslie drafted memoranda about his interactions with Goodwin on those days. The July 18 memorandum notes that Goodwin failed to give Leslie the original Letter of Warning back to him. It also detailed how Goodwin demanded that he and Leslie communicate only by email rather than through their government-issued radios. Leslie wrote in the memorandum that Goodwin requested to go to the EEO office that morning, and when Leslie told him he could go in the afternoon, Goodwin began complaining by email, from the office, about the excessive heat at the worksite and not being able to go to the EEO office, showing that Goodwin was not at the worksite. The July 19 memorandum notes that Goodwin continued sending emails that morning instead of being at the worksite. It noted that the emails concerned Goodwin's request for accommodations for his disability, for which Leslie provided the contact information for the reasonable accommodation coordinator. It also noted that Goodwin continued to express his desire to protest the Letter of Warning received on July 17.

Goodwin submitted an accommodation request through the EEO on July 22, 2019. Goodwin sought work orders and instructions in writing, such as text and email. Goodwin also sought the opportunity to take three to four breaks of no longer than ten minutes per break, as needed. Goodwin included a doctor's note recommending, but not requiring, that Goodwin eat five to six times per day and suggesting that Goodwin may need additional breaks. Goodwin did not include medical documentation for his expressed need to have work orders and instructions in writing.

Leslie approved Goodwin's accommodations request, with modifications, on August 14, 2019. The approval noted that all work orders were provided in printed form and employees were provided note pads and pens to write things down. Leslie approved Goodwin to take two more breaks per day to eat, in addition to a lunch break, assuming Goodwin ate once before work and once after work, to accommodate his need to eat five to six times per day. Goodwin told the EEO that he disagreed with Leslie's response and refused to sign the agreement. He asked the EEO if he could appeal Leslie's decision or add it to an EEO complaint. The parties did not engage in any further interactive process thereafter.

Throughout September 2019, Goodwin began taking more sick leave and eventually, on September 30, exhausted his annual leave, sick leave, and disabled veterans leave. Leslie discussed with Goodwin that he would be marked absent without leave (AWOL) for any

further sick leave he took unless Goodwin provided medical documentation. On September 17, Goodwin emailed Leslie complaining that Leslie failed to notify Goodwin about training that Goodwin missed and that Leslie was refusing to email Goodwin with work-related information. Goodwin stated that Leslie's actions were discriminatory, harassing, and aggravating Goodwin's service-connected disabilities. On September 25, Goodwin emailed Leslie that he was too sick to work and that he needed to take sick leave or leave without pay, adding that he would try to get a doctor's note. On the same day, Leslie drafted a second memorandum documenting Goodwin's purported misconduct from July 18 to July 19. This memorandum was not presented to Goodwin until after Goodwin's termination in October.

On the morning of October 17, 2019, the Director of the Directorate of Public Works informed Goodwin that his employment was being terminated based on his failure to demonstrate fitness for continued employment during his probationary period. The letter cited the instances between July 18-19, 2019 where Goodwin purportedly failed to follow his supervisor's instructions, including by reporting to a place of duty one hour late on July 18, departing a work area without authority to check email on July 18, and failing to report to a place of duty on July 19. The letter also cited the misconduct allegations related to Goodwin's failure to work on a smoke detector on July 8, for which he was disciplined on July 17. Goodwin's termination was effective the next day, October 18. Goodwin walked out of the meeting and, that afternoon on October 17, filed a formal EEO complaint of discrimination. The complaint claimed discrimination and retaliation because of Goodwin's disability, race, and age.

Goodwin filed this action on August 31, 2021.

Report at 1–6 (citations omitted).

The Magistrate Judge filed the Report on May 2, 2024, and the parties each filed their objections on July 8, 2024. Wormuth then filed her reply to Goodwin's objections on July 22, 2024, and Goodwin filed his objections to Wormuth's objections on July 23, 2024.

The Court requested additional briefing on July 30, 2024, which the parties filed on July 31, 2024.

## IV.    DISCUSSION AND ANALYSIS

### A.    *Goodwin's Objections*

#### 1.    *Whether the Magistrate Judge erred in limiting Goodwin's Rehabilitation Act retaliation claim to just his termination*

First, Goodwin  objects to the Magistrate Judge's conclusion "that the only plausible materially adverse act listed by Goodwin is his termination."  Goodwin's Objections at 3 (quoting the Report at 17).

Goodwin then lists nine of what he terms to be additional materially adverse employment actions.  But, he provides neither argument nor legal authority as to what makes them so.

It is certainly outside the province of this Court to develop his arguments for him.  Therefore, the Court will overrule Goodwin's first objection.

#### 2.    *Whether the Magistrate Judge erred in suggesting the Court grant summary judgment as to Goodwin's disability discrimination claim*

In Goodwin's second objection, he argues the Magistrate Judge erred in suggesting the Court grant summary judgment as to his disability discrimination claim.  There are four subparts to this objection.

First, Goodwin "objects to the [Magistrate Judge's] finding . . . [Goodwin] did not raise a cause of action for disability discrimination."  *Id*. at 4.

The Magistrate Judge suggested in the Report "Goodwin's Amended Complaint does not raise a separate cause of action for disability discrimination, although the parties brief that claim as if it had.  Thus, the court considers the Amended Complaint to have been constructively amended to add a disability discrimination claim by the implied consent of the parties."  Report at 12.  She, then, addresses the claim.  Accordingly, this argument is unnecessary.

Second, Goodwin contends the Magistrate Judge misstated the proper elements for a prima facie case of disability discrimination.  She cites to *Hannah P. v. Coats*, 916 F.3d 327 (4th Cir.

7

2019), which states, to establish this prima facie case of disability discrimination, the plaintiff "must show that: (1) [he] is disabled; (2) [he] was otherwise qualified for the position; and (3) [he] suffered an adverse employment action solely on the basis of [his] disability." *Id.* at 342. He specifically takes exception to the third element.

Goodwin has failed to cite to any law showing *Hannah* has been overruled. In fact, as recently as May 29, 2024, the Fourth Circuit cited to it when setting forth the elements of a prima facie disability discrimination claim under the Rehabilitation Act. *Williams v. Md. Dep't of Health*, No. 22-1074, 2024 WL 2746979, at *4 (4th Cir. May 29, 2024) (per curiam).

Also, in a dissent to a May 24, 2024, Fourth Circuit published opinion, Judge Thacker, referencing the third element, states, "[w]e have held that the ADA only requires that a plaintiff demonstrate his disability was a motivating factor in the discrimination. The [Rehabilitation Act], on the other hand, requires . . . the discrimination be solely by reason of his disability." *Cartagena v. Lovell*, 103 F.4th 171, 192 (4th Cir. 2024) (Thacker, J., dissenting).

Third, Goodwin "objects to the [the Magistrate Judge's] finding . . . [Goodwin] cannot 'forecast evidence refuting [Wormuth's] motion' as it relates to his disability discrimination claim." Goodwin's Objections at 6 (quoting Report at 14).

But, this argument is based, in part, on Goodwin's assumption the Court would agree the Magistrate Judge erred in applying the *Hannah* factors to his disability discrimination claim. The Magistrate Judge was correct, however, in employing the *Hannah* factors to this claim, and Goodwin is mistaken in relying on any different factors.

Thus, for all the reasons given above, the Court will also overrule Goodwin's second objection.

> ### 3.    Whether the Magistrate Judge erred in suggesting the Court dismiss Goodwin's Rehabilitation Act failure to accommodate claim

Third, Goodwin "objects to the [Magistrate Judge's] recommendation . . . his failure to accommodate claim should be dismissed." *Id*. at 8.

"To establish a prima facie case on [his] failure-to-accommodate claim, [the plaintiff] must show . . . (1) [he] qualifies as an 'individual with a disability' . . . ; (2) the [defendant] had notice of [his] disability; (3) [he] could perform the essential functions of [his] job with a reasonable accommodation; and (4) the [defendant] refused to make any reasonable accommodation." *Reyazuddin v. Montgomery Cnty. Maryland*, 789 F.3d 407, 414 (4th Cir. 2015) (quoting 29 U.S.C. § 705(20)). The Magistrate Judge "concludes . . . no reasonable jury could conclude on this record that [Wormuth] refused to make a reasonable accommodation for Goodwin's disabilities." Report at 10.

There are four subparts to this objection. First, Goodwin argues, "[i]n violation of the Rehabilitation Act, [his] supervisor modified the accommodations." Goodwin's Objections at 8 (emphasis omitted). But, he fails to provide any argument concerning the modifications. Under this subpart, he also objects to the Magistrate Judge's statement that "Goodwin's argument ignores the undisputed fact that he rejected Leslie's proposed modifications[.]" *Id*. (quoting Report at 11). But again, he neglects to develop the argument.

To the extent this objection is related to his contention "the reasonable accommodations were initially allowed," *id*., as the Magistrate Judge stated, "Goodwin's [suggestion] of Leslie's modification as ending the accommodations is unsupported in the record: no evidence supports a conclusion that Goodwin was already receiving any accommodations." Report at 12.

In the second subpart to this objection, Goodwin contends he "did not refuse to engage in the interactive process[ ]" in finding a suitable accommodation for his alleged disabilities. Goodwin's Objections at 9 (emphasis omitted). According to Goodwin, the Magistrate Judge "errs by finding

that 'Goodwin is the party who refused to engage in the interactive process and no reasonable jury could find otherwise on this record.'" *Id*. (quoting Report at 12).

As to this argument, Goodwin provides details about his emailing Leslie on September 25, 2019, about needing to be off because he was sick and his supervisor requiring a doctor's excuse for the absence, which Goodwin provided. It is unclear to the Court, however, what, if anything, this has to do with Goodwin's engagement in the interactive process. Suffice it to say Goodwin has failed to point to any evidence he attempted to participate in the interactive process.

In the third subpart of this objection, according to Goodwin, the Magistrate Judge "errs by finding . . . [Goodwin's] accommodation requests were oral and were not in place before July 2019." *Id*. (emphasis omitted). Here, Goodwin objects to the Magistrate Judge's statement that, "[e]ven accepting Goodwin's assertion that he orally requested accommodations before filing a formal request, there is no evidence in the record that such accommodations were in place before July." Report at 12.

In support of Goodwin's contention the Magistrate Judge erred, he points to a March 11, 2019, email from Leslie in which he wrote to Goodwin "I do not need to see documentation of your disability as I am aware that you have a service connected disability. I do however need you to correct your leave from sick leave to disabled veterans leave as that is what you requested and that is what I approved. Thank you." Goodwin's Response, Exhibit 1.1 at 73.

Goodwin argues this "prove[s] that accommodations were approved, and in writing, before July 2019." Goodwin's Objections at 10. But, this shows only Leslie was aware of Goodwin's disability. It fails to establish Goodwin sought accommodations, or that any were in place, before July 2019.

The Court notes Leslie wrote in a July 19, 2019, memorandum to the record, "I was unaware of any disability or that [Goodwin] was officially asking for a reasonable accommodation."

Wormuth's Motion, Exhibit V, Leslie's July 19, 2019, Memo at 1.  Although the statement about being unaware of Goodwin's disability, when compared with the earlier March 11, 2019, email, appears to be false, it is inconsequential as to the accommodation issue.

In the fourth subpart of this objection, Goodwin claims Leslie's "actions to stop accommodating [him] violate the Rehabilitation Act."  Goodwin's Objections at 10 (emphasis omitted).  According to Goodwin, the Magistrate Judge "errs by finding, . . . 'Goodwin fails to provide any explanation as to why Leslie's modification was not sufficient to allow Goodwin to perform the essential functions of his job.'"  *Id*. (quoting the Report at 12).  Goodwin maintains "[t]he modifications made by Leslie were to stop providing the accommodations and modify them unilaterally."  *Id*.

Goodwin, however, has neglected to identify any evidence explaining why Leslie's modified accommodation was insufficient to allow him to perform the essential functions of his job.  Further, as the Magistrate Judge aptly put it, "Goodwin's description of Leslie's modification as ending the accommodations is unsupported in the record[.]" Report at 12.

Consequently, for all these reasons, the Court will also overrule Goodwin's third objection.

> **4.    *Whether the Magistrate Judge erred in suggesting the Court grant summary judgment as to Goodwin's Title VII discrimination and disparate treatment claim***

Goodwin's fourth objection concerns his Title VII discrimination and disparate treatment claim.  There are two subparts to this objection.

First, Goodwin "objects to the [Magistrate Judge's] assertion . . . [he] has abandoned his Title VII discrimination and disparate treatment claim."  Goodwin's Objections at 12 (emphasis omitted).

To establish a prima facie claim, the plaintiff must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action . . . ; and (4) that

similarly-situated employees outside the protected class received more favorable treatment." *White v. BFI Waste Servs.,LLC*, 375 F.3d 288, 295 (4th Cir. 2004).

As to the job performance factor, Goodwin states Wormuth's "management . . . documented . . . [Goodwin's] performance was seen as satisfactory up until his engagement in protected activity, mainly, complaining of discrimination." Goodwin's Objections at 13. He cites then to particular portions of the deposition testimony of two of his supervisors, Leslie and Thiel.

The Court has reviewed those sections of the deposition, but is unable to find any indication they specifically testified Goodwin's actual job performance was satisfactory up until he engaged in protected activity.

Nevertheless, assuming his job performance was satisfactory, the Court turns to the similarly-situated element of a prima facie Title VII discrimination and disparate treatment claim.

Goodwin says "it is undisputed that James Hartley (Hartley), a white employee of the same position under the same supervisor, was not disciplined or ultimately terminated for engaging in the same exact behavior as [Goodwin]." *Id*.

Goodwin, however, unlike Hartley, was a probationary employee. "As the term 'probationary' implies, employees so designated are on probation and subject to summary dismissal." *Nat'l Treasury Emp. Union v. Fed'l Lab. Rel. Auth.*, 737 F.3d 273, 276 (4th Cir. 2013). And, as such, they have fewer protections than permanent employees. *Id*. at 277.

It then follows "probationary employees and permanent employees are not similarly situated[.]" *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005). Consequently, Goodwin fails to satisfy all the elements of a prima facie Title VII discrimination and disparate treatment claim.

As such, the Court will overrule Goodwin's fourth objection, too.

> **5.    *Whether the Magistrate Judge erred in suggesting the Court grant summary judgment as to Goodwin's Title VII retaliation claim***

Goodwin's fourth objection concerns the Magistrate Judge's suggestion the Court grant summary judgment as to his Title VII retaliation claim.

To state a prima facie case of retaliation under Title VII, the plaintiff "must show (1) . . . he engaged in a protected activity; (2) [the defendant] acted adversely against him; and (3) the protected activity was causally connected to the adverse action." *Holland v. Wash. Homes*, Inc., 487 F.3d 208, 218 (4th Cir. 2007).

"The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . . [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (citation omitted) (internal quotation marks omitted).

Goodwin "objects to the [Magistrate Judge's] assertion . . . [his] discrimination claim cannot survive because his supervisor is of the same race." Goodwin's Objections at 15 (emphasis omitted). He listed this objection under his arguments regarding his Title VII discrimination and disparate treatment claim. But, inasmuch as the Magistrate Judge addressed this issue under her discussion of Goodwin's Title VII retaliation claim, the Court will also deal with it in its discussion of this claim.

The Court is unable to find any assertion in the Report that Goodwin's "discrimination claim cannot survive because his supervisor is of the same race." *Id*. (emphasis omitted). The Magistrate Judge, instead, stated "[t]he fact that Leslie and Goodwin are the same race weakens any inference that Leslie was motivated by racial animus." Report at 22 n.7. And, the Fourth Circuit, albeit in an unpublished case, has held the fact the ultimate decision-makers were of the same race as the

plaintiff made it "unlikely" that their decision was motivated by racial animus. *Coggins v. Gov't of D.C.*, 173 F.3d 424 (4th Cir. 1999) (unpublished table decision).

The Court has carefully reviewed the record and disagrees with Goodwin's allegation the Magistrate Judge accorded undue emphasis to the same race dynamic.

There are three other subparts to this objection. The first two are closely related. So, the Court will discuss them contemporaneously.

First, Goodwin insists "[t]he content of the termination letter contradicts the [Magistrate Judge's] temporal proximity and causation findings." Goodwin's Objections at 16 (emphasis omitted). And second, he maintains "[t]emporal proximity strongly supports [his] Title VII retaliation claim." *Id.* at 19 (emphasis omitted).

He first cites to *Westmoreland v. TWC Admininstration, LLC*, 924 F.3d 718 (4th Cir. 2019), for the proposition that, because the employer's "policy permitted [it] to impose other, less severe sanctions . . . the jury could reasonably have questioned whether firing [the plaintiff] for one infraction that did not require termination was such an extreme overreaction as to be pretextual." *Id.* at 728 (citation omitted) (internal quotation marks omitted). But, he fails to submit any argument or evidence such a policy was in place here. Thus, this argument is unavailing.

The Termination Letter provides, in pertinent part, the following:

> 1. This is to inform you that you will be terminated from your Electrician (MVO), WG- 2805-10 position effective 18 October 2019. This action is taken in accordance with Title 5, Code of Federal Regulations, Part 315, based on your unsatisfactory performance and conduct. The reason for your termination during the probationary period is your failure to demonstrate fitness for continued employment.

> 2. The specifics supporting your failure to demonstrate fitness for continued employment are as follows:

> a. On 10 December 2018, you were appointed to an Electrician (MVO), WG-2805-10 position. Your appointment was subject to a two-year probationary

period starting on 10 December 2018. Your initial appointment provided for a two-year probationary period through 10 December 2020. The appointment provided that if your performance is not satisfactory or if you fail to demonstrate fitness, employment will be terminated.

b.    On July 18, 2019, you failed to follow supervisor's instructions when you were told to report to your place of duty right away, but did not report until approximately one hour later. This is just one example of your repeated unsatisfactory conduct that you have been counseled to improve on, but you have not shown consistent and sustained improvement.

c.    Again, on 18 July 2019, you failed to follow supervisor's instructions when you departed your work area without authority to check email. There is no justification for your failure to follow procedures for work assigned by your supervisor.

d.    On 19 July 2019, your misconduct continued, you failed to follow supervisor's instruction to report to your place of duty. Therefore, your performance is not satisfactory and you have failed to demonstrate fitness for continued employment.

3.    On 17 July 2019, you received a letter of warning putting you on notice of your misconduct. Your position description requires you to perform Electrician (MVO) duties in accordance with appropriate regulations and your Army Position Description. Your actions bring into serious question your ability to function as a productive and trusted employee in our organization. My trust in your character has been compromised and I am extremely concerned with your sense of judgment, which is a very important requirement for an employee with the assigned duties of an Electrician (MVO). Therefore, this action is taken for such cause that will promote the efficiency of the service.

Wormuth's Motion, Exhibit I, Goodwin's Email at 1.

On July 18, 2019, Goodwin sent an email to Winegar, his third-line supervisor, and Thiel,

his second-line supervisor. In it, he stated,

I would like to [set up] a meeting as soon as possible to discuss the 'Letter of Warning' I received from my supervisor Marcus Leslie,

> alleging misconduct.  The document is bias in nature.  I feel discriminated against due to my color, age, and disability.  My supervisor and this agency is aware of all my disabilities which I experience an asthma attack exacerbate yesterday shortly after Mr. Leslie surprise meeting.  Marcus Leslie (Supervisor) and James Brown (Team-leader) have conspired against with acts of discrimination.

Wormuth's Motion, Exhibit I, Goodwin's Email at 1.

Goodwin contends "[e]very single one of the[ ] specifications given in support of [his] termination [except number 3] occur immediately after [his] Title VII protected activity on July 18, 2019."  Goodwin's Objections at 18.  Thus, Goodwin maintains the Magistrate Judge "erred by finding . . . the facts viewed in the light most favorable to Goodwin do not support a reasonable finding that he was fired in retaliation for any race-based protected activity."  *Id*. at 19.

But, there is simply no way in which this sequence of these events, without more, can lead to the conclusion Wormuth's deciding to terminate Goodwin, based on Leslie's assessment of Goodwin's poor performance, was a pretext for a retaliatory motive.  "[T]emporal proximity alone is not sufficient to establish . . . engagement in protected activity was a 'but for' cause of her [adverse employment action]."  *Staley v. Gruenberg*, 575 Fed. App'x 153, 156 (4th Cir. 2014).  Put a slightly different way, "'[b]ut for' causation [to establish pretext]. . . cannot be established by temporal proximity alone."  *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 660 (5th Cir. 2012).

Because all the reasons given for terminating Goodwin occurred in July, Goodwin also questions why Wormuth waited until October to terminate him.  But, according to Leslie's deposition testimony, he had hoped things would improve.  *See* Wormuth's Motion, Exhibit F, Leslie's Deposition at 124:7–14 ("It was a letter of warning in hopes that it would just be that, just a letter of warning, and things would get better, like he would just turn around and be the team player and live up to the potential that I knew he had. That never happened.  He just became increasingly more difficult to work with.").

Goodwin also contends the Magistrate Judge "errs by finding the retaliation culminated at the time of termination. . . . [I]t started later the same day, on July 18, 2019, Leslie compiled a 'Memorandum for Record' containing additional allegations against [Goodwin]. These facts support that temporal proximity alone would meet the causation necessary for material facts in dispute." Goodwin's Objections at 19-20 (citation omitted) (footnote omitted).

Wormuth, however, claims this "argument fails . . . because (1) [Goodwin] did not exhaust administrative remedies regarding that claim; (2) . . . the July 18 Memo does not constitute a materially adverse action; (3) Leslie had legitimate, non-discriminatory reasons for writing the July 18 Memo; and (4) Goodwin has not established that [Leslie] lied about those reasons." Wormuth's Reply at 17.

Assuming, without deciding, Goodwin exhausted this claim and the July 18 Memo amounts to a materially adverse employment action, such that he is able to establish a prima facie case of Title VII retaliation, the Court agrees "Leslie had legitimate, non-discriminatory reasons for writing the July 18 Memo; and . . . Goodwin has not established that [Leslie] lied about those reasons." *Id*.

That is, as Goodwin's supervisor, Leslie had a legitimate and non-discriminatory reason to keep an account of Goodwin's job performance. And, Goodwin fails to ever argue the specific complaints about his misbehavior and poor performance are unfounded or untrue. Thus, again, he is unable to establish pretext.

Goodwin further maintains the Magistrate Judge "erred by finding that. . . . there is a nearly three-month gap between Goodwin's single, vague complaint about race discrimination and his termination." Goodwin's Objections at 19 (quoting Report at 22).

According to Goodwin, his Title VII retaliation claim is supported by the temporal proximity of his protected activity of sending the email to his supervisors on June 18, 2019, "and the written discipline issued thereafter, on the same day." *Id*. at 20.

17

These arguments all go to the causal element of his prima facie Title VII retaliation claim. But, even if Goodwin was able to establish a prima facie case of Title VII retaliation, again, Leslie, as Goodwin's supervisor, had a legitimate and non-discriminatory reason to keep an account of Goodwin's job performance. And, as before, Goodwin has failed to establish pretext.

As an aside, in arguing "temporal proximity is enough to prove a retaliatory motive[,]" Goodwin's Objections at 19, Goodwin cites to *Shields v. Federal Express Corp*., 120 F. App'x 956, 963 (4th Cir. 2005), for the proposition three to four months is a "relatively short gap" of time when considering temporal proximity.

But, here is the phrase in the context of the opinion: "According to [the plaintiff], the relatively short gap between the time he reported [the] despicable workplace language and the time [he] suffered an adverse employment action gives rise to an inference of causation." *Id*. The Fourth Circuit, however, rejects the plaintiff's argument, stating "the Supreme Court had cast . . . doubt on the extent to which we can use a four-month gap alone as sufficient proof of causation." *Id*.

Thus, it was false to suggest *Shields* stands for the proposition three to four months is a "relatively short gap" of time when considering temporal proximity. The Court will charge the misrepresentation to carelessness, versus a lack of candor.

As to the third subpart of this objection, Goodwin states his "Title VII claim is not only causally supported by temporal proximity." Goodwin's Objections at 20 (emphasis omitted). He says he "has other evidence, in addition to temporal proximity, supporting his causation burden of proof." *Id*.

As before, however, he has failed to rebut Wormuth's legitimate and non-discriminatory reason for firing him.

Therefore, for the above reasons, the Court will overrule Goodwin's fifth objection, as well.

### B.     Wormuth's Objections

#### 1.     Whether the Magistrate Judge erred in suggesting the Court deny summary judgment as to Goodwin's Rehabilitation Act retaliation claim

In light of the discussion above, only one claim remains: Goodwin's Rehabilitation Act retaliation claim.  Wormuth lodged several objections to the Magistrate Judge's suggestion to deny her motion for summary judgment on this claim. And, Goodwin filed a reply.

Summary judgment is appropriate only when there is no genuine issue of material fact that could lead a trier of fact to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Here, the Court is of the opinion there are genuine issues of material fact as to this claim, which must be decided by a trier of fact.  Thus, it will deny Wormuth's motion for summary judgment as to Goodwin's Rehabilitation Act retaliation claim.

As the Court explains below, it will conduct a bench trial on this claim.  Inasmuch as the Court will be making findings of fact and conclusions of law then, it will wait and consider the legal and factual arguments contained in the objections and reply at the bench trial.

Consequently, the Court will dismiss Wormuth's objections without prejudice.

#### 2.     Whether Goodwin is entitled to a jury trial on his retaliation claim under the Rehabilitation Act

By text order on July 30, 2024, the Court instructed counsel to "confer and file a joint reply brief . . . setting forth whether or not, and why or why not, *Israelitt v. Enter. Servs. LLC*, 78 F.4th 647, 660 (4th Cir. 2023) and *D'Agostino v. Secretary United States Air Force*, 2024 WL 1209745, at *5 (3rd 2024), are applicable to the questions of whether [Goodwin] . . . is entitled to (1) a jury trial and (2) legal damages as to his retaliation claim under the Rehabilitation Act."

In *Israelitt*, the Fourth Circuit held "an ADA-retaliation plaintiff is not entitled to legal damages and therefore not guaranteed a jury trial by the Seventh Amendment."  *Israelitt*, 78 F.4th

at 661.  In concluding legal remedies were unavailable to such a plaintiff, *Israilitt* cited, with approval, to *Tucker v. Shulkin*, No. 20-1317, 2020 WL 4664805, at *1 (3d Cir.  July 24, 2020).

In that case, the *Tucker* court stated the plaintiff's "retaliation claim was not redressable, as he cannot recover compensatory or punitive damages as remedies for retaliation under the Rehabilitation Act[.]"  *Id.*

Citing to *Israelitt*, the *D'Agostino* court held it could "discern no error in the District Court's decision to conduct a bench trial on D'Agostino's retaliation claim under [Section 504 of] the Rehabilitation Act [inasmuch as] [t]he only remedies available for such claims are equitable in nature[.]"  *D'Agostino*, 2024 WL 1209745, at *5 (citations omitted) (footnote omitted).

Goodwin, however, argues "[a] retaliation claim under the Rehabilitation Act . . . is entitled to a jury trial and legal damages."  Parties' Reply at 1.  He cites to *Pandazides v. Virginia Board of Education*, 13 F.3d 823 (4th Cir. 1994), to support his argument.  In that case, the Fourth Circuit held the plaintiff was entitled to a jury trial for her discrimination claim, on the basis of a handicap,  under Section 504 of the Rehabilitation Act.  *Id.* at 824.

Goodwin states "[t]he *D'Agostino* opinion errs in applying the *Israelitt* decision to the Rehabilitation Act. . . .  The *Israelitt* decision applied to the Americans with Disabilities Act and involved a non-federal employer.  In the *Israelitt* decision[,] [it] did not opine that it was overruling *Pandazides*."  Parties' Reply at 4.  Goodwin further maintains "*Pandazides* is still good law applicable to the Rehabilitation Act claims in this case."  *Id.*

Wormuth, on the other hand, contends "the right to a jury trial turns on the answer to the . . . question . . . whether legal remedies are available."  *Id.* at 5 (quoting *Israelitt*, 78 F.4th at 658).  She argues Goodwin is unable to show he is entitled to any legal damages.

In support, Wormuth points to the *Israelite* court's reliance on the *Tucker* case, which, again, held the plaintiff's "retaliation claim was not redressable, as he cannot recover compensatory or

punitive damages as remedies for retaliation under the Rehabilitation Act[.]" *Tucker*, 2020 WL 4664805, at *1.

As to Goodwin's reliance on *Pandazides*, Wormuth states "[t]hat opinion does not relate to a Rehabilitation Act retaliation claim and, therefore, appears inapposite." Parties' Reply at 5.

Wormuth has the better argument. The fact the *Israelitt* court relied on the *Tucker* opinion, which held the plaintiff is unable to recover legal damages as remedies for retaliation under the Rehabilitation Act, leads to the logical conclusion the Fourth Circuit agrees with the *Tucker* court that a plaintiff bringing a retaliation claim under the Rehabilitation Act is unable to claim legal damages.

Additionally, the Rehabilitation Act itself is without an anti-retaliation provision, but expressly incorporates the ADA's anti-retaliation provision, 42 U.S.C. § 12203. And, as the Court has already noted, as per *Israelitt*, 78 F.4th at 661, compensatory damages are unavailable for retaliation under the ADA in the Fourth Circuit.

Further, "Congress explicitly made Title VII remedies available for violations of section 501[]" of the Rehabilitation Act. *Rivera v. Heyman*, 157 F.3d 101, 104 (2nd Cir. 1998). "Section 2000e-5 is the remedies provision for Title VII discrimination claims. . . . [It] lists remedies, but only equitable ones." *Israelitt*, 78 F.4th at 658. Thus, because "a Title VII plaintiff may [obtain only] equitable relief, compensatory [and] punitive damages are unavailable." *Millea v. Brown*, No. 92–2734, 1993 WL 118072, at *3 (7th Cir. 1993). And, "[w]here the particular remedial section in the statute provides for only equitable remedies[,] then no right to a jury trial exists." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 392 (3d Cir. 1988).

Of course, the Court is aware, "[w]ith the passage of the [Civil Rights Act of 1991], Congress provided for additional remedies, including punitive damages, for certain classes of Title VII and ADA violations." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999). But, the Court has been unable to find, and the parties have failed to point to, any binding authority stating any sort of additional remedies for retaliation claims under the ADA and/or the Rehabilitation Act are provided in the 1991 Act.

Although "the two sections [of the Rehabilitation Act] were not intended to provide alternative means to obtain relief for the same act of discrimination against a federal employee[,]" *Rivera*, 157 F.3d at 104–05, the Court turns to a brief discussion of Section 504. "Because neither § 504 nor [any other relevant statute] provides any guidance on the availability of a jury trial in a private action, it is necessary to inquire as to whether such a right is provided by the Constitution." *Pandazides*, 13 F.3d at 828. The Seventh Amendment provides, in relevant part, that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."

But, "the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981).

Consequently, based on the discussion above, because Goodwin is unable to show he is entitled to a jury trial on his retaliation claim under the Rehabilitation Act, the Court will set this case for a bench trial.

## VI.    CONCLUSION

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules Goodwin's objections, dismisses Wormuth's objections without prejudice, adopts the Report,  and incorporates it herein.

It is therefore the judgment of the Court Wormuth's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.  More specifically, the motion is **GRANTED** as to all Goodwin's claims, except his retaliation claim under the Rehabilitation Act.  The motion is **DENIED** as to that claim.

The bench trial on Goodwin's Rehabilitation Act retaliation claim will commence on August 26, 2024.

**IT IS SO ORDERED**.

Signed this 8th day of August, 2024, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE